**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

FELISHA COTTLE, on behalf of )
herself and others similarly-situated, )
      Plaintiff, )
       )
      v. )      CAUSE NO.: 2:11-CV-95-PRC
       )
FALCON HOLDINGS MANAGEMENT, LLC )
and FALCON HOLDINGS MANAGEMENT, )
LLC d/b/a CHURCH'S CHICKEN, )
      Defendants. )

**OPINION AND ORDER**

This matter is before the Court on (1) Defendants' Motion for Discovery Sanctions as to

Certain FLSA Opt-In Plaintiffs [DE 77], filed on June 11, 2012; (2) Defendants' Partial Motion for

Summary Judgment as to the Claims of Certain FLSA Opt-In Plaintiffs [DE 80], filed on June 11,

2012; and (3) Defendants' Motion to Decertify the Collective Action [DE 83], filed on June 22,

2012. The motions are fully briefed and ripe for ruling.

**PROCEDURAL BACKGROUND**

Plaintiff Felisha Cottle filed the instant cause of action against Falcon Holdings Management

LLC d/b/a Church's Chicken on March 15, 2011. In Count V of the Complaint, Ms. Cottle asserts

that this cause of action is brought as an "opt-in" collective action under the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 216(b), for failure to pay overtime wages. Ms. Cottle alleges that her

FLSA claims are similar to the claims of the putative collective action plaintiffs. Count V further

alleges that "Defendant failed to compensate Plaintiff and the putative representative action

plaintiffs at a rate of not less than one and one-half times the regular rate of pay for work performed

in excess of forty hours in a work week, and therefore, Defendant has violated, and continues to

violate," the FLSA, specifically 29 U.S.C. § 207(a)(1). Compl, ¶ 68. Ms. Cottle alleges that the

plaintiffs suffered lost wages and that the conduct of Defendant constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

Falcon Holdings Management LLC d/b/a Church's Chicken filed an Answer on May 13, 2011.

On August 18, 2011, Ms. Cottle filed a Motion to Certify as a Collective Action.  On November 3, 2011, the Court conditionally certified this matter as a collective action.

On November 18, 2011, Ms. Cottle filed a Motion for Approval of Proposed Notice to Potential Opt-In Plaintiffs, which the Court granted on December 6, 2011, and which was placed on the docket on January 27, 2012.

On February 9, 2012, Felicia Cottle, Latoya Latrice Hughes, and Takyla Jones filed Consent to Become a Party Plaintiff forms.

On February 14, 2012, Shalonda Marie Jones, Deon Litrell Thompson, and Kyle Devoughn Ferguson filed Consent to Become a Party Plaintiff forms.

On February 16, 2012, Alanza L. McCullum, Fred Culbreath, and William M. Lockhart filed Consent to Become a Party Plaintiff forms.

On February 27, 2012, Lisa Dionne Stubbs, Jasmine Marie Jackson, Kendra Jackson, Jacqueline Coley, Jasmine Smith, Roy Lee Gail, Tommy Lewis Conley, Jr., and Toinette Y. Neal filed Consent to Become a Party Plaintiff forms.

On April 11, 2012, Ms. Cottle filed an Amended Complaint, with leave of Court, naming Defendants Falcon Holdings Management, LLC and Falcon Holdings, LLC d/b/a Church's Chicken. Count V of the Amended Complaint for "FLSA Failure to Pay Overtime" makes the same allegations as Count V of the Original Complaint against both Defendants.

On April 17, 2012, Petrina Denise Burpo filed a Consent to Become Party Plaintiff form.

On April 18, 2012, Defendants filed an Answer to the Amended Complaint.

On May 14, 2012, Parthenia Ford filed a Consent to Become Party Plaintiff form.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## ANALYSIS

Before the Court are Defendants' Motion for Discovery Sanctions, Motion to Decertify Collective Action, and Defendants' Partial Motion for Summary Judgment as to the Claims of Certain FLSA Opt-In Plaintiffs. The Court considers each in turn.

## I.      Motion for Discovery Sanctions

In the instant motion, Defendants ask the Court to impose the sanction of dismissal on FLSA Plaintiffs, other than Ms. Cottle, for failure to respond to discovery requests propounded upon them, for failure to supplement and verify interrogatory answers, and for failure to comply with the case management plan in this matter.

On July 7, 2011, the Court held a Rule 16(b) scheduling conference and issued a scheduling order, setting the discovery deadline for March 15, 2012. On April 2, 2012, the parties filed a Joint Motion for Modification of Case Management Order, which the Court granted, setting new deadlines, including a discovery deadline of June 1, 2012. Defendants represent that counsel for the parties agreed that discovery would be provided no later than May 1, 2012, in order to afford counsel for Defendants sufficient time to determine if depositions of some of the opt-in FLSA Plaintiffs, other than Ms. Cottle, would be needed before the close of discovery.

As of May 1, 2012, none of the opt-in FLSA Plaintiffs had responded to the discovery requests. After communication between counsel, Defendants received the discovery responses of five of the opt-in Plaintiffs on May 11, 2012: Tommy Conley, Fred Culbreath, Roy Lee Gail, Shalonda Jones, and Deon Thompson. However, only three of the May 11, 2012 interrogatory responses were signed "under oath" as required by Federal Rule of Civil Procedure 33(b)(3). The remaining two interrogatory responses were subsequently verified by a supplemental response. Of the eleven other opt-in FLSA Plaintiffs on whom discovery was served–Jasmine Smith, Jacqueline Coley, Kendra Jackson, Jasmine Marie Jackson, Lisa Stubbs, Toinette Neal, Alanza McCullum, Kyle Ferguson, Takyla Jones, Latoya Hughes, and William Lockhart–none responded to Defendants' discovery requests. Defendants did not serve written discovery on Petrina Burpo and Parthenia Ford; therefore, they are not subject to the instant Motion for Discovery Sanctions.

In the instant motion, Defendants ask the Court to sanction all 16 of the opt-in FLSA Plaintiffs on whom discovery was served for either failing to respond to discovery, for failing to supplement interrogatory responses with properly verified responses, and/or for failing to follow the scheduling order. The Court considers each argument in turn.

**A.      Failure to Respond to Discovery**

Defendants ask the Court to dismiss the claims of the eleven opt-in FLSA Plaintiffs who wholly failed to respond to any of Defendants' written discovery. Federal Rule of Civil Procedure 37(d) provides for sanctions when a party fails to attend his or her own deposition, serve answers to interrogatories, or respond to a request for inspection:

> **(d) Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection.**
> **(1) *In General.***

(A) *Motion; Grounds for Sanctions.* The court where the action is pending may, on motion, order sanctions if:

> (i) a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition; or
>
> (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

(B) *Certification.* A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action.

Fed. R. Civ. P. 37(d)(1). The sanctions available include any of the orders listed in Federal Rule of Civil Procedure 37(b)(2)(A)(i)-(vi), which include "dismissing the action or proceeding in whole or in part." *See* Fed. R. Civ. P. 37(d)(3) (types of sanctions); Fed. R. Civ. P. 37(b)(2)(A)(v) (dismissal).

"To dismiss a case as a sanction for discovery abuse the court must only find that the party's actions displayed willfulness, bad faith, or fault." *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009) (upholding dismissal under Rule 37(d) as a sanction for a party's failure to appear for a deposition after being served with proper notice).[1] In this case, the Court finds that the following FLSA Plaintiffs identified by Defendants willfully refused to respond to Defendants' written discovery requests: Jasmine Smith, Jacqueline Coley, Kendra Jackson, Jasmine Marie Jackson, Lisa Stubbs, Toinette Neal, Alanza McCullum, Kyle Ferguson, Takyla Jones, Latoya Hughes, and William Lockhart. All eleven FLSA Plaintiffs filed signed Consent to Become a Party Plaintiff forms in this case, subjecting themselves to discovery. Defendants served written discovery on all

---

[1] This standard is different than the standard for dismissal based on a want of prosecution or failure to comply with orders of the court, in which case the standard is "that an action may be dismissed only when there is a 'clear record of delay or contumacious conduct, or prior failed sanctions.'" *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009).

eleven opt-in Plaintiffs via counsel.  Defendants afforded them several extensions of time to respond

prior to counsel's agreement to the May 1, 2012 deadline.  None of these FLSA Plaintiffs responded

to the discovery requests.  Notably, Plaintiffs' response brief not only provides no explanation for

these eleven opt-in Plaintiffs' failure to respond to discovery, the brief does not even acknowledge

that Defendants seek dismissal on this ground.

The Court recognizes that dismissal with prejudice is an "extreme sanction that should be

used only as a last resort." *Robinson v. Champaign Unit 4 School Dist.*, 412 F. App'x 873, 877 (7th

Cir. 2011).  However, in this case, Defendants are prejudiced by the lack of any discovery responses

by these FLSA Plaintiffs; Defendants have no other manner in which to obtain the same information,

which is necessary for them to determine if the opt-in FLSA Plaintiffs are similarly situated to Ms.

Cottle for purposes of the certification of the collective action.  No lesser sanction will cure this

prejudice.  *Id.* (citing *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005); *David

v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *Maynard v. Nygren*, 332 F.3d 462, 467-68

(7th Cir. 2003)).  Accordingly, the Court finds that dismissal is an appropriate sanction in this case

for the failure to provide any written discovery responses and orders that the claims of the following

eleven FLSA Plaintiffs are dismissed with prejudice:  Jasmine Smith, Jacqueline Coley, Kendra

Jackson, Jasmine Marie Jackson, Lisa Stubbs, Toinette Neal, Alanza McCullum, Kyle Ferguson,

Takyla Jones, Latoya Hughes, and William Lockhart.

**B.**    **Sworn Signatures**

In their motion, Defendants assert that Tommy Conley, Fred Culbreath, Roy Lee Gail,

Shalonda Jones, and Deon Thompson did not properly verify their interrogatory responses pursuant

to Rule 33(b)(3) and did not supplement their interrogatory responses to properly verify them.  Rule

33(b)(3) provides: "(3) *Answering Each Interrogatory.*  Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing *under oath*."  Fed. R. Civ. P. 33(b)(3) (emphasis added).[2]

In response, Plaintiffs offer evidence that Mr. Gail, Mr. Conley, and Ms. Thompson provided signed and sworn original interrogatory answers with their initial responses on May 10, 2012, and Mr. Culbreath and Ms. Jones supplemented their interrogatory answers with signatures made "under oath," all by signing after either the following language (1) "I swear and affirm under the penalties of perjury, that the foregoing answers to Interrogatories are true and correct to the best of my knowledge," Def. Br., Exh. B, p. 15 (Gail), p. 19 (Thompson), p. 32 (Conley); Pl. Br., Exh. 1, p. 4 (Jones), or the following language (2) "I, Fred Culbreath, affirm under the penalties for perjury that the foregoing representations are true," Pl. Br., Exh. 1, p. 3 (Culbreath).

In their reply brief, Defendants argue that "[v]erified and sworn to under oath means in front of a notary or any other person authorized to administer an oath.  A cursory review of the rule and the relevant case law would indicate so."  Def. Reply, p.4.  Defendants cite no authority in support of this contention.  In fact, sworn signatures to interrogatory responses do not have to be notarized. *Johnson v. Randle*, No. 10-CV-135, 2011 WL 6938382, *1 (S.D. Ill. Dec. 29, 2011); *see also United States v. Wellman*, 830 F.2d 1453, 1467 (7th Cir. 1987) (noting that under federal law, 28 U.S.C. § 1746, a declaration under penalty of perjury generally may be used in lieu of an oath before a notary).

28 U.S.C. § 1746 provides, in relevant part:

---

[2] Defendants incorrectly cite Federal Rule of Civil Procedure 37(c)(1) for the requirement that interrogatories be sworn to under oath.  *See* Def. Br., p. 7; Def. Reply, p. 4.

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
. . .
(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
(Signature)".

28 U.S.C. § 1746.

Thus, Mr. Conley, Mr. Culbreath, Mr. Gail, Ms. Jones, or Ms. Thompson properly signed their interrogatory answers under oath, and the Motion for Discovery Sanctions is denied on this basis.

## C.    Scheduling Order

In the motion, Defendants argue that the responding FLSA Plaintiffs–Mr. Conley, Mr. Culbreath, Mr. Gail, Ms. Jones, and Ms. Thompson–should be sanctioned for providing untimely discovery responses. As indicated above, the Court issued an order extending the discovery deadline to June 1, 2012 by agreement of the parties. Among themselves, the parties agreed to serve all discovery responses by May 1, 2012, in order to retain sufficient time to conduct depositions before the close of discovery. As of May 1, 2012, none of the opt-in FLSA Plaintiffs had responded to Defendants' written discovery requests. However, Defendants fail to apprise the Court in their motion that, on May 10, 2012, Defendants' attorney sent Plaintiffs' attorney an email correspondence at 4:08 p.m.: "When will we get the discovery? We agreed on May 1st and it is now

May 10th.  If I don't have it by tomorrow I will have no choice but to seek the appropriate relief

from the court."  Def. Br., Exh. D, p. 9.  Plaintiffs' attorney responded at 4:10 p.m.: "We are putting

the drafts in final as I write this.  We will send you e-mail and hard copies by the end of the day."

*Id.*  The five discovery responses were sent approximately an hour later.  By his email, Defendants'

attorney gave Plaintiffs' attorney until May 11, 2012, to provide the discovery responses, and the

responses were served prior to that date.  Thus, the responses were not untimely.  The Court denies

the Motion for Discovery Sanctions on this basis.

**D.    "Certification":  Federal Rule of Civil Procedure 37(d)(1)(B) and Northern District of Indiana Local Rule 37-1**

In their response brief, Plaintiffs argue that Defendants did not properly confer under Federal

Rule of Civil Procedure 37(d)(1)(B) and Northern District of Indiana Local Rule 37-1.  Rule

37(d)(1)(B) provides: "Certification.  A motion for sanctions for failing to answer or respond must

include a certification that the movant has in good faith conferred or attempted to confer with the

party failing to act in an effort to obtain the answer or response without court action."  Fed. R. Civ.

P. 37(d)(1)(B).  Local Rule 37-1 provides:

> (a)    Certification Required. A party filing any discovery motion must file a
> separate certification that the party has conferred in good faith or attempted
> to confer with other affected parties in an effort to resolve the matter raised
> in the motion without court action. The certification must include:
> > (1)    the date, time, and place of any conference or attempted conference;
> > and
> > (2)    the names of the parties participating in the conference.
> (b)    Failure to File Certification. The court may deny any motion described in
> subdivision (a)—except those motions brought by or against a person
> appearing pro se—if the required certification is not filed.

N.D. Ind. L.R. 37-1 ("Resolving Discovery Disputes").

Defendants attached to the instant Motion for Discovery Sanctions a "Certificate of Conference," which certifies generally that counsel has "conferred with and attempted in good faith to resolve this dispute by communicating the same in writing and orally with Plaintiffs' counsel of record . . . ." Def. Certification (docket entry 79).  The certificate references Exhibits A and D to the Motion for Discovery Sanctions for the dates and times of the "numerous attempts that counsel and his assistants have made to resolve this issue."  Counsel for Defendants also states that he spoke by phone on two separate occasions with counsel for Plaintiffs regarding these discovery issues and that his assistants had also spoken with Plaintiffs' counsel's assistants.

Plaintiffs argue that Defendants' pre-filing contacts were not meaningful as to the issues raised in the instant motion.   First, Plaintiffs contend that  Defendants' May 10, 2012 correspondence giving Plaintiffs until the following day to serve written discovery responses meant that the May 10, 2012 service of those responses was timely.   Moreover, Plaintiffs note that Defendants failed to inform the Court of that May 10, 2012 correspondence.  Most importantly, it appears that only one written communication occurred following the May 10, 2012 service of discovery responses.  On May 11, 2012, an assistant to Defendants' attorney wrote: "I noticed we have Responses to RFPs and ROGs for the following: [Gail, Conley, Culbreath, Thompson, Jones]. But, we are missing the following: [Neal, Jackson, Jackson, Coley, Stubbs, Smith, Lockhart, McCullum, Ferguson, Jones, Jones].  Please let me know if I am just overlooking them, or if perhaps they are coming in the mail?"  Def. Br., Exh. B, p. 2.  Plaintiffs' attorney's assistant wrote back: "We have not received their responses back yet.  We are anticipating receiving them hopefully by next week sometime."  *Id*.  On May 18, 2012, Plaintiffs' counsel's assistant wrote to Defendants' counsel's assistant: "I am sending the hard copies of the discovery on Tommy Conley, Deon

10

Thompson and Roy Gail today. We are still waiting for the rest of the authorizations to come back." Def. Br., Exh. D, p. 6. All of the other conferring occurred prior to the May 10, 2012 discovery production. There was no conference between counsel regarding the outstanding discovery from the eleven opt-in FLSA Plaintiffs who never responded.

Plaintiffs also argue that Defendants never communicated to Plaintiffs that they believed the interrogatory answers were not properly verified.

The Court finds that, although counsel for Defendants did communicate with counsel for Plaintiffs throughout the discovery process, Defendants did not comply with the spirit of Rule 37(d)(1)(B) and Local Rule 37-1 by not conferring after the discovery was produced and after the deadline had passed and by failing to confer specifically about the issues Defendants raised in this motion that required resolution by the Court. However, the Court declines to deny the motion on this basis.

## E.    Defendants' Request for Attorney Fees

Defendants ask the Court for an award of attorney fees and expenses in bringing this Motion for Discovery Sanctions as authorized under the provision of Rule 37(d) for "types of sanctions":

> Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d)(3). Specifically, Defendants assert that they have spent $29,325.00 in legal fees related to "propounding discovery to the FLSA Plaintiffs in this matter, legal research in preparation for drafting this motion and drafting this motion." Def. Mot., p. 3. First, Rule 37(d)(3)

sanctions allows for expenses, including attorneys fees "caused by the failure" of the party to act. Thus, any fees and costs incurred in propounding discovery may not be included in the request itself.

As to whether an award of expenses is warranted, the Court first notes that the only portion of the Motion for Discovery Sanctions that the Court granted is that portion asking for dismissal of the claims of the opt-in Plaintiffs who did not respond at all.  Other than sending a few emails asking when discovery responses would be coming, Defendants do not offer evidence of additional effort to obtain this discovery; no informal conference was held after the deadline passed and prior to filing the instant motion regarding the outstanding discovery responses.  Also, Defendants were incorrect on the law regarding the verification of signatures, and Defendants did not inform the Court of the May 10, 2012 email correspondence regarding the production of Plaintiffs' discovery.  The Court finds that much of the Motion for Discovery Sanctions could have been resolved by the parties if Defendants had properly conferred prior to filing the motion.  Under all the circumstances, the Court finds that an award of expenses would be unjust and denies the Motion for Discovery Sanctions as to the request for an award of expenses and fees.

**F.    Conclusion**

Based on the foregoing, the Court grants in part and denies in part the Motion for Discovery Sanctions and orders that the claims of Jasmine Smith, Jacqueline Coley, Kendra Jackson, Jasmine Marie Jackson, Lisa Stubbs, Toinette Neal, Alanza McCullum, Kyle Ferguson, Takyla Jones, Latoya Hughes, and William Lockhart are dismissed with prejudice.  As a result, this case remains pending as to Ms. Cottle and FLSA Plaintiffs Mr. Conley, Mr. Culbreath, Mr. Gail, Ms. Jones, Ms. Thompson, Ms. Burpo, and Ms. Ford.

**II.      Motion to Decertify Collective Action**

In Count V of the Amended Complaint, Ms. Cottle and the FLSA Plaintiffs seek damages

based on Defendants' alleged violations of the FLSA for failing to compensate them at a rate of not

less than one and one-half times the regular rate of pay for work performed in excess of forty hours

in a work week as required by 29 U.S.C. § 207(a)(1).

On November 3, 2011, after reviewing Ms. Cottle's motion to conditionally certify this

matter and Defendants' response thereto, the Court conditionally certified a class to proceed as a

collective action based on Ms. Cottle's own affidavit attesting to the hearsay testimony of Fred

Culbreath as well as based on a list provided by Ms. Cottle of 94 employees who worked at

"Church's Chicken Store # 532" during the relevant time period.[3]   The Court defined the scope of

the class as:

> 94 employees of Defendant Falcon Holdings Management, L.L.C. d/b/a Church's
> Chicken who worked for Defendant at its Store Number 532 during Plaintiff's period
> of employment with Defendant from October 26, 2009, until May 2, 2010 who were
> not compensated at a rate of at least one-and-one-half times their regular pay rate for
> work performed in excess of forty hours per week.

November 3, 2011 Court Order (docket entry 33).

Defendants provided Ms. Cottle with a list of names and last known addresses of employees

that included those defined in the class but also included individuals who, from the face of the list,

did not meet the definition of the class.   Ms. Cottle, via her counsel of record, mailed the court-

approved notices to the individuals on the list provided by Defendants.   Eighteen individuals, in

addition to Ms. Cottle, filed written consents to become a party plaintiff, namely (1) Takyla Jones,

(2) Latoya Hughes, (3) Kyle Ferguson, (4) Shalonda Jones, (5) Deon Thompson, (6) Alanza

---

[3] The list of 94 individuals was an "Employee Phone List" for "Church's Chicken Store 532," printed on
February 17, 2010.  See Pl. Mot. to Certify, Exh. B (docket entry 20-3).

McCullum, (7) Fred Culbreath, (8) William Lockhart, (9) Tommy Conley, (10) Jasmine Smith, (11) Roy Gail, (12) Lisa Stubbs, (13) Jacqueline Coley, (14) Kendra Jackson, (15) Jasmine Jackson, (16) Toinette Neal, (17) Parthenia Ford, and (18) Petrina Burpo (collectively the "FLSA Plaintiffs"). All of these names came from the list sent by Defendants to Ms. Cottle pursuant to the certification order.

Defendants propounded discovery on all but two of the 18 FLSA Plaintiffs.[4] Only five of the FLSA Plaintiffs provided answers to Defendants' interrogatories: Fred Culbreath, Deon Thompson, Roy Gail, Shalonda Jones, and Tommy Conley.

The five depositions taken in this case were of Ms. Cottle, Jim Doughty, Farid Talukdar, Monir Zaman, and Tiffany Finch. Fred Culbreath's deposition was scheduled, and he agreed to appear; however, he failed to do so. Defendants represent that Mr. Culbreath opted in to this matter as an FLSA Plaintiff shortly after failing to appear for his deposition.

Based on the Court's ruling above on Defendants' Motion for Discovery Sanctions dismissing eleven FLSA Plaintiffs, the following seven FLSA Plaintiffs remain in this case in addition to the named Plaintiff, Ms. Cottle: Mr. Conley, Mr. Culbreath, Mr. Gail, Ms. Jones, Ms. Thompson, Ms. Burpo, and Ms. Ford.

Pursuant to the FLSA, an employee may bring an action to recover unpaid overtime compensation on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). This is known as a "collective action." *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004). However, no employee may be a party plaintiff to a collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which

---

[4] Defendants explain that they did not serve discovery on Ms. Ford and Ms. Burpo because they opted in so late in the process that any discovery responses would have been due at or after the discovery deadline.

such action is brought." 29 U.S.C. § 216(b).  Collective actions under the FLSA are fundamentally different than class actions under Federal Rule of Civil Procedure 23 because plaintiffs in a collective action must "opt-in" to the action to be bound by a judgment.  *See King v. Gen. Elec. Co.*, 960 F.2d 617, 621 (7th Cir. 1992); *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982).

The FLSA "neither defines the term 'similarly situated' nor instructs judges when to exercise their discretion and authorize notice to potential plaintiffs." *Powers v. Centennial Commc'ns Corp.*, 679 F. Supp. 2d 918, 921 (N.D. Ind. 2009).  "Although the Seventh Circuit has not decided this issue, 'the majority of courts . . . have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action.'" *Franks v. MKM Oil, Inc.*, No. 10 CV 13, 2012 WL 3903782, at *9 (N.D. Ill. Sept. 7, 2012) (quoting *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845 (N.D. Ill. 2008)); *see also Powers*, 679 F. Supp. 2d at 921.

The first step requires the plaintiff to make a modest factual showing that she and the other employees to whom notice is to be sent were victims of a common policy or plan that violated the law.  *See, e.g.*, *Franks*, 2012 WL 3903782, at *10; *Wiyakaska v. Ross Gage, Inc.*, No. 1:10-CV-1664, 2011 WL 4537010, at *2 (S.D. Ind. Sept. 23, 2011); *Campbell v. Advantage Sales & Mktg., LLC*, No. 1:09-CV-1430, 2010 WL 3326752, at *3 (S.D. Ind. Aug. 24, 2010); *Powers*, 679 F. Supp. at 921; *Biddings v. Lake County,* No. 2:09-CV-38-PRC, 2009 WL 2175584, at *2 (N.D. Ind. July 15, 2009).  In this case, the Court found that Ms. Cottle made this modest factual showing, conditionally certified the collective action, and granted leave for notice and an opportunity to "opt-in" to be sent to those employees who are similarly situated to Ms. Cottle as defined by the class.  *See Cameron-Grant v. Maxim Healthcare Servs. Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir.

15

2003); *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 606 (W.D. Wis. 2006); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003). This action then proceeded through discovery as a collective action. At the time of the instant motion, the deadline to opt-in had passed. The discovery deadline expired on June 1, 2012.

The second step of the analysis occurs at the close of discovery at which time a defendant can move to decertify the collective action and dismiss the opt-in plaintiffs in light of the record developed during discovery. *See, e.g., Franks*, 2012 WL 3903782, at *10; *Cameron-Grant*, 347 F.3d at 1243 n.2; *Campbell*, 2010 WL 3326752, at *3; *Flores*, 289 F. Supp. 2d at 1045. In such a case, the court must determine whether the plaintiffs who have opted in to the lawsuit are, in fact, "similarly situated" to the representative plaintiff. *Campbell*, 2010 WL 3326752, at *3. If the court finds that there is not sufficient similarity, the court may decertify the class and dismiss the opt-in plaintiffs from the lawsuit without prejudice. *Drew v. Shoe Show, Inc.*, No. 10-CV-656, 2011 WL 4387096, at *3 (S.D. Ill Sept. 19, 2011) (citing *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008); *Marshall v. Amsted Indus., Inc.*, No. 10-CV-11, 2010 WL 2404340, *5 (S.D. Ill. June 16, 2010)).

To make this determination at the second step, the Court considers "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Franks*, 2012 WL 3903782, at *10 (quoting *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004)).

In the instant motion, Defendants argue that this matter should be decertified as a collection action because the FLSA Plaintiffs have failed to develop and produce any evidence that they were

similarly situated and that they were subject to a common policy or plan to violate the FLSA.  In response, the FLSA Plaintiffs assert that Defendants have failed to account for evidence that the FLSA Plaintiffs are sufficiently similarly situated to Ms. Cottle to maintain their claims collectively and to account for the smallness and homogeneity of the opt-in class.  The Court considers the three factors in turn.

## A.    Similarity of Factual and Employment Settings

The Court considers whether the FLSA Plaintiffs share similar or disparate factual and employment settings.  Defendants argue that Ms. Cottle and the majority of the FLSA Plaintiffs worked at different locations, had different job titles, worked during different time frames, had different pay rates, and their job duties varied based upon the location of work and the time frame in which they worked for the Defendants.

### 1.    Ms. Cottle's Position

First, Defendants assert that Ms. Cottle was a Team Member and was transitioning into a role of Shift Leader when she was terminated.  Defendants assert that this placed her in a more managerial role in contrast with the others who were either cooks, cashiers, or basic team members with no managerial responsibilities.  Defendants offer no evidence in support of either contention.

In contrast, Ms. Cottle offers evidence that Monir Zaman, the store manager at store 532, which is where Ms. Cottle worked and which is the store at which the certified class worked, testified that Ms. Cottle was hired as a team member in the roll of cashier and implied that she was not a shift manager.[5]  Ms. Cottle asserts that Mr. Zaman testified that all three employees working

---

[5] Ms. Cottle asserts in her response brief that "Monir Zaman, the store manager at store 532, first of all, testified that Cottle was, indeed, not a shift manager and was hired as a team member."  Pl. Br., p. 7.  In support, Ms. Cottle cites page 59 of Exhibit 8, which is Mr. Zaman's deposition.  Nowhere in the 6 pages of Mr. Zaman's deposition submitted to the Court does Mr. Zaman state that Ms. Cottle was "not a shift manager;" rather, Mr. Zaman's explanation of Ms.

on any given shift shared common duties.  *See* Pl. Br., p. 7 (citing Exh. 8, p. 11 lines 9-11; p. 60 line

21-p. 61 line 18; p. 62 line 14-p. 63 line 6).  Ms. Cottle also argues that Defendants' counsel's

failure to stipulate that she was a manager during her deposition suggests that Defendants should

not be permitted to argue that she was differently situated than the others.[6]  In other words, Ms.

Cottle argues that any distinction between Ms. Cottle's alleged duties and role as a shift manager

---

Cottle's job duties appears to exclude the possibility that she was a shift manager.  The relevant questioning on page 59 provides:

> Q.  While Felisha was working at your store, what were her duties?
> A.  She was hired as a team member and  - - -
> Q. I don't  - - I don't want to get technical.  I just did  - - what was she doing for Church's while she was there?
> . . .
> Q.  Now, what was she doing, though?  Once Felisha started working, what did she do?
> A.  She start as a cashier.
> Q.  And did she do anything other than cashier?
> A.  Cashier means we have a team work and we have a schedule.  We have a list in the store, the job description, putting the job for the team member.  Team member, we are a team so it's team work.
> Q.  Okay.  When you say team work, who else was - - were other people helping with the cashier?
> A.  No, because she handling the register only.
> Q.  Okay.  Well, what did  - - what else did Felisha do other than operate the cash register?
> A.  Take care of the customer, product, cleaning, counters, set up, lobby - - . . . .  Three people are working on the shift.  We don't have any extra person to take care for anything.
> Q.  And were there typically three workers on each shift?
> A.  Yes, sir.
> Q.  And would - - would a shift manager have to be on each shift?
> A.  Shift manager, yes.  Every shift should be one in charge.
> Q.  A shift manager and two team members?
> A.  Shift manager, cook, and cashier.  A manager, cook, and cashier.

Pl. Br., Exh. 8, pp. 59-61.

[6] The following exchange took place during Defendants' counsel's questioning of Ms. Cottle at her deposition (Ms. McDermott is counsel for Ms. Cottle and Mr. Flynn is counsel for Defendants):

> Q.  Right. But let's just say folks in your chain aren't cutting their slack, you could get in trouble for that.  Right?
> A.  Yes.
> Q.  Because you're the manager.
> MS. MCDERMOTT: Are you stipulating that she's a manager?
> MR. FLYNN: I'm just asking her.  I'm not stipulating she was a manager.
> MS. McDERMOTT: Okay.
> MR. FLYNN: Q objection to the sidebar.

Pl. Resp., Exh. 7, p. 135.

differed only in a few respects from those duties of "cooks, cashiers or basic team members," and, thus, the class is not disparate enough to justify decertification on this basis.

The Court agrees.  Although Defendants attempt to distinguish Ms. Cottle from the other FLSA Plaintiffs by title, Defendants make no argument that any difference in job title translates to a difference in the calculation of overtime pay between Ms. Cottle and the FLSA Plaintiffs.  The parties do not dispute that Ms. Cottle and the FLSA Plaintiffs were all hourly wage earners subject to the overtime provisions of 29 U.S.C. § 207(a)(1).  Therefore, regardless of the Plaintiffs' job titles, Defendants have not identified any meaningful difference in the way the Plaintiffs' hours or salaries were calculated based on job duties that would make Ms. Cottle not similarly situated to the others.

2.      *FLSA Plaintiffs Who Worked at Different Stores and in Different Time Periods*

In contrast, for many of the FLSA Plaintiffs, the fact that they worked at different locations and during different time periods than Ms. Cottle means that they do not meet the criteria for participation in the collective action as conditionally certified in the Court's November 3, 2011 Order; not only are they not similarly situated, they cannot be class members.[7]  This is somewhat unique from most cases in which a court is considering whether class members who *do* meet the criteria for inclusion in the given collective action are similarly situated in work location and time period.

Simultaneously with this Motion to Decertify the Collective Action, Defendants have filed a Motion for Partial Summary Judgment seeking judgment in their favor against the FLSA Plaintiffs

---

[7] It was possible for such individuals to file opt-in consent forms in this case because the list Defendants provided to Ms. Cottle for the purpose of sending out notices and opt-in forms included individuals outside of the class certified by the Court and because it appears that Ms. Cottle sent notices to all the individuals on the list.

19

who (1) are not within the conditionally certified class either because they did not work at the same store as Ms. Cottle (store 532) or because they did not work during the defined time period (October 25, 2009, through May 2, 2010) or (2) whose claims are barred by the relevant statute of limitations. As set forth in Part III below, the Court finds that summary judgment is proper against FLSA Plaintiffs Tommy Conley, Jr., Roy Lee Gail, Shalonda Jones, Petrina D. Burpo, and Parthenia Ford because they do not meet the criteria for participation in this collective action; they either did not work in store 532 and/or did not work during the time period from October 25, 2009, through May 2, 2010. In contrast, it is undisputed that Fred Culbreath and Deon Thompson worked at store 532 during the relevant time period; Defendants did not move for summary judgment against either Mr. Culbreath or Ms. Thompson.

Therefore, the only remaining opt-in FLSA Plaintiffs for the Court to consider on this "similarly situated" analysis will be Fred Culbreath and Deon Thompson. Both individuals worked at store 532 and worked during the same period as Ms. Cottle, and thus, are similarly situated in that regard. However, Defendants also argue that Mr. Culbreath and Ms. Thompson have "failed to develop or produce any evidence to support their inclusion in this matter and should likewise be barred from this action." Def. Br., p. 8. In support, Defendants cite generally to Exhibits T and U. Exhibit T consists of Mr. Culbreath's "payroll status/change forms" and "Transaction Inquiry Report" forms from July 5, 2002, through August 5, 2011. Exhibit U consists of Ms. Thompson's "payroll status/change forms" and "Transaction Inquiry Report" forms from May 14, 2010, through September 3, 2010, and from June 24, 2011, through August 19, 2011. For both Mr. Culbreath and Ms. Thompson, the Transaction Inquiry Report lists for each paycheck date the number of hours to

20

pay ("Units to Pay"), the pay rate, and the department.  Defendants suggests that these documents prove that Mr. Culbreath and Ms. Thompson were properly compensated for the hours they worked.

In contrast, Ms. Cottle cites to deposition testimony and interrogatory responses made under oath by Mr. Culbreath, Ms. Thompson, and herself that they were clocked out by someone else and not paid for hours that they worked in excess of forty hours per week.  In his response to Interrogatory No. 4, Mr. Culbreath wrote:  "A manager told me 'you can stay on the clock but you won't get paid.'  I would look at my pay stub and it would say thirty nine (39) hours and I know I had worked more."  Pl. Br., Exh. 2, p. 2.  In response to Interrogatory No. 9, Mr. Culbreath wrote: "Also, the [managers] pulled time on Sunday and could adjust it."  *Id*.

In response to Interrogatory No. 4, Ms. Thompson wrote: "I and other Church's employees complained to each other regularly about not getting paid for all hours worked and about getting clocked out by management before we were done working.  These other employees included Tiffany, Shay, Fred Culbreath and Bobby Dixon."  *Id.*, Exh. 3, p. 2.

The following exchange occurred during Ms. Cottle's deposition:

Q.   So it's your testimony that somebody, whether it's Shana Caldwell or
     somebody else, was actually going in and manipulating your time by
     clocking you out when you were actually still working?
A.   She would tell me.
Q.   What would she tell you?
A.   While I was working and I would go to clock out, and she would tell me I
     already clocked you out a long time ago.
Q.   We've already talked about this.  So I just want to be clear.
     As far as other individuals who worked for Falcon Holdings Management,
     the only folks that you've spoken to would be Fred Culbreath and Bobby
     Dickson about not being paid overtime; right?
A.   Yes.
Q.   And I guess, if I'm correct, you and Bobby actually never really talked about
     any of the overtime.  You just had a casual conversation - -
A.   Right.
Q.   - - When you picked him up one day?

21

A.      That's it.

*Id*., Exh. 7, p. 143 lines 15-24; p. 144, lines 1-14.

Ms. Cottle also cites to Exhibit 9 to her brief to contend that Defendants failed to keep proper records such that her burden of proving her claim is lessened to "any reasonable showing," citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds as stated in IBP, Inc. v. Alvarez*, 546 U.S. 21, 40-41 (2005).  Pl. Br., p. 9 (emphasis added). First, the holding in *Anderson* does not address an FLSA plaintiff's burden of initially proving that she worked hours for which she was not properly paid overtime; rather, the Supreme Court addressed the burden of proving damages and articulated that a different standard applies for proving damages when an employer's records do not provide an accurate record of time worked.  *See Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 595 (7th Cir. 2008) (finding that *Anderson* "did not set forth a new 'definite and certain evidence' standard but merely recognized the established requirement that damages be proven").  Second, Ms. Cottle does not explain how the evidence in Exhibit 9, which includes the hour sheets produced by Defendants for each FLSA Plaintiff, "show[s] disturbing and significant irregularities."  None of the evidence in Exhibit 9 is overtly inculpatory, and Ms. Cottle does not explain how the identified discrepancies support a claim that certain employees were forced to work overtime without pay.  For example, Ms. Cottle points to bates stamped pages Falcon 01112-01115 and asserts that these pages show "Thompson working at store 532 and being underpaid wages by a slight amount;" however, Ms. Cottle offers no calculations or

examples of how Ms. Thompson was underpaid or why Ms. Cottle has drawn that conclusion.  Pl.

Br., p. 9.[8]

Thus, it remains the FLSA Plaintiffs' burden to demonstrate that they performed work for

which they were not properly compensated.  *Brown*, 534 F.3d at 595 (citing *Anderson*, 328 U.S. at

686-87).[9]  The Court finds that the FLSA Plaintiffs have met this burden for the purposes of the

instant Motion to Decertify Collection Action.  Plaintiffs Ms. Cottle, Mr. Culbreath, and Ms.

---

[8] In addition, some of the pages are records for Kendra Jackson and Toinette Neal, who are no longer class members nor would they be eligible to be class members.

The first two pages, Falcon 00720 and Falcon 00726, are spreadsheets with four columns that have no employee name nor do the four columns of information have headings (although they appear to be date, employee number, number of hours worked, and store number).  These two pages have the same employee number.  But there are no documents attached identifying which employee this is.  By cross referencing the number with other exhibits attached to Defendants' motion, the Court has determined that this employee is Kendra Jackson.  Ms. Jackson is not a potential class member because the Court has dismissed her claim.  Because her claim has been dismissed, the Court does not reach the issue on summary judgment of whether Ms. Jackson meets the criteria for participation in the class.  However, a review of the evidence submitted in support of the Motion for Partial Summary Judgment shows that Ms. Jackson was employed by Defendants from August 27, 2007, until June 6, 2009, and, thus, does not meet the criteria for participation in the class.

Falcon 00842 is a similar spreadsheet but lists "Toinette Neal, Clock Hours" at the top, and lists the four columns as "TRAN DATE," "EmployeeNo," "Hours," "STR NBR"; however, Toinette Neal is not a potential class member because the Court has dismissed her claim.  As with Ms. Jackson, because her claim has been dismissed, the Court does not reach the issue on summary judgment of whether Ms. Neal meets the criteria for participation in the class.  However, a review of the evidence submitted in support of the Motion for Partial Summary Judgment shows that Ms. Neal was employed by Defendants from May 31, 2011, until October 23, 2011, and, thus, does not meet the criteria for participation in the class.

Falcon 01111-01112 contain a similar spreadsheet for Deon Thompson with her "Clock Hours".  Falcon 01113 is a "Combined History" for Deon Thompson with her HR status, position, and store number as well as her earnings history.  Falcon 01114-01115 are a "Check Inquiry Report" for Deon Thompson.  These pages are all cited together for Ms. Cottle's general argument that Thompson was "underpaid wages by a slight amount," Pl. Br., p. 9, but it is not evident why Ms. Cottle draws that conclusion.

It is not clear if the spreadsheets are records kept in the normal course of business or if they are spreadsheets compiled for the purpose of this litigation.

Falcon 01032 is page 72 of Mr. Culbreath's Transaction Inquiry Report (dates 11/27/2009 through 1/8/2010).  Plaintiffs cite this page solely to show that Mr. Culbreath worked at store 532, "contrary to defendants' position." Pl. Br., p. 9.  However, it is not clear to the Court that Defendants contest that Culbreath worked at store 532.

[9] The Court notes that in their brief, Defendants apply the incorrect standard for a plaintiff's burden of establishing a prima facie case for overtime violations under the FLSA, citing *Anderson v. Mt. Clements Pottery Co.*, 328 U.S. 680 (686-87 (1946), and asserting that a plaintiff must establish "with 'definite and certain evidence' that (1) they performed work for which they were not properly compensated; (2) the amount and extent of work as a matter of 'just and reasonable interference'[sic]; and (3) the Defendants knew and/or should have known about the alleged work." Def. Br., pp. 10-11.  As noted above in the text, the Seventh Circuit Court of Appeals has held that "*Anderson*, however, does not set forth a new 'definite and certain evidence' standard but merely recognized the established requirement that damages be proven."  *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 595 (7th Cir. 2008).

Thompson have each stated under oath that they were required to clock out by someone else before finishing their work and that they were not compensated for the time they worked after they were clocked out. Notably Defendants have offered no testimony to negate these sworn statements. Defendants have offered only the formal time sheets that record the time worked when it was clocked in and out; this necessarily does not address the question of whether Ms. Cottle, Mr. Culbreath, and Ms. Thompson were required to continue working, *after* they were clocked out, without compensation. *See Franks*, 2012 WL 3903782, at *3, 10 (finding that plaintiffs did not meet their burden of persuading the court that a collective action should be certified because there was not enough evidence of a uniform policy regarding the Off-The-Clock claims when the employer denied any such policy and provided affidavits by managers at other stores to that effect); *Russell*, 575 F. Supp. 2d at 935 (finding that, regardless of the company's official rules, the evidence offered "suggest that something more than a rogue manager or two required the employees" to work without proper compensation).

Therefore, the FLSA Plaintiffs have offered sufficient evidence that they are similarly situated and subject to a uniform policy at store 532 during the time period at issue to avoid decertification.

**B.     Individualized Defenses**

In this factor, the Court considers whether Defendants have potential defenses that pertain to the class as a whole, or whether various defenses will be raised with respect to individual plaintiffs. In this case, Defendants argue that they will raise individual defenses that certain FLSA Plaintiffs do not meet the criteria for participation in the class, that certain FLSA Plaintiffs' claims

24

are barred by the statute of limitations, and that each FLSA Plaintiff does not have sufficient evidence to establish a prima facie case for overtime violations under the FLSA.

Given that only seven opt-in FLSA Plaintiffs remain in this action in addition to Ms. Cottle, the burden of individual analysis required of each of the three listed defenses will be minimal. In fact, Defendants succinctly assert the first two defenses in their Motion for Partial Summary Judgment, which the Court addresses in Part III below. As a result of that ruling, only three Plaintiffs will remain as part of the collective action. Defendants' attempt to prove the merits of their affirmative defenses in this Motion to Decertify the Collection Action is premature and does not go to the issue of whether the defenses asserted will be so individualized as to merit decertification. The Court finds that the burden of asserting at trial that each of the three Plaintiffs does not have prima facie evidence for an overtime violation under the FLSA will be minimal. Decertification on this ground is not warranted.

## C.   Fairness and Procedural Considerations

Finally, Defendants assert that courts have refused to certify classes and have decertified classes where individualized damage issues make the class unmanageable because such issues eliminate any efficiencies associated with the collective action procedure. As noted in the previous section, the individualized damage issues and the need for individual testimony and cross examination related to the three FLSA Plaintiffs will not render the class unmanageable or undermine the objectives of proceeding collectively. The considerations of judicial economy and case manageability weigh in favor of maintaining the certified class as a collective action.

Defendants also argue that they have conducted and/or attempted to conduct discovery in good faith, yet their ability to discover what evidence, if any, the FLSA Plaintiffs may have to

support their inclusion in this matter has been utterly frustrated by their failure to respond to discovery requests.  Those FLSA Plaintiffs who provided no discovery responses have been dismissed as a result; thus, Defendants suffer no prejudice on this basis.

**D.    Conclusion**

Based on the forgoing analysis of the relevant factors, the Court denies the Motion to Decertify the Collective Action.

**III.   Motion for Partial Summary Judgment**

Count V of Ms. Cottle's First Amended Complaint alleges that Defendants violated the FLSA, 29 U.S.C. § 207(a), with respect to Ms. Cottle and other similarly situated individuals.  Ms. Cottle brought Count V of her First Amended Complaint as an "opt-in" collective action under 29 U.S.C. § 216(b).  Eighteen individuals, in addition to Ms. Cottle, filed written consents to become a party plaintiff (hereinafter "FLSA Plaintiffs"), namely (1) Takyla Jones, (2) Latoya Hughes, (3) Kyle Ferguson, (4) Shalonda Jones, (5) Deon Thompson, (6) Alanza McCullum, (7) Fred Culbreath, (8) William Lockhart, (9) Tommy Conley, (10) Jasmine Smith, (11) Roy Gail, (12) Lisa Stubbs, (13) Jacqueline Coley, (14) Kendra Jackson, (15) Jasmine Jackson, (16) Toinette Neal, (17) Parthenia Ford, and (18) Petrina Burpo.

In the instant motion, Defendants move for summary judgment on the FLSA claims for unpaid overtime wages asserted by 16 of the FLSA Plaintiffs but not as to the FLSA claims of Mr. Culbreath and Ms. Thompson.  Plaintiffs filed a response, and Defendants filed a reply.

Because FLSA Plaintiffs Jasmine Smith, Jacqueline Coley, Kendra Jackson, Jasmine Marie Jackson, Lisa Stubbs, Toinette Neal, Alanza McCullum, Kyle Ferguson, Takyla Jones, Latoya Hughes, and William Lockhart have been dismissed pursuant to Federal Rule of Civil Procedure

37(d), the Court denies as moot the Motion for Partial Summary Judgment as to those eleven Plaintiffs. However, FLSA Plaintiffs Tommy Conley, Roy Lee Gail, Shalonda Jones, Petrina Burpo, and Parthenia Ford remain in this case. Accordingly, the Court considers the Motion for Partial Summary Judgment as to these five FLSA Plaintiffs.

## A.      Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving

27

party's case." *Celotex*, 477 U.S. at 325.  When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990).  However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists.  *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings.  *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).  Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## B.    Material Facts

As set forth above, the Court conditionally certified the class and has denied Defendants' motion for decertification. The Court certified the following class:

> 94 employees of Defendant Falcon Holdings Management, L.L.C. d/b/a Church's Chicken who worked for Defendant at its Store Number 532 during Plaintiff's period of employment with Defendant from October 26, 2009, until May 2, 2010 who were not compensated at a rate of at least one-and-one-half times their regular pay rate for work performed in excess of forty hours per week.

November 3, 2011 Court Order (docket entry 33). The Court ordered "Defendant to submit the addresses, telephone numbers, and dates of employment for the 94 potential plaintiffs listed" in [DE 20-3] to Plaintiff's counsel. *Id.* On December 27, 2011, Defendants provided Plaintiffs with the required list, specifying each individual's name, address, telephone number, date of birth, sex, race, and job title. The list included approximately 280 names. Without citation to evidence, Plaintiffs state in their Statement of Facts Giving Rise to Genuine Dispute that "[b]ecause the court order indicated the information that was to be provided and the conditional scope of the class, it was assumed that the defendants would comply with the court's order and that the information would be regarding those members of the conditional class." Pl. Resp., p. 3-4.

29

Ms. Cottle, via her counsel of record, mailed the court-approved notices to the individuals on the list provided by Defendants.  All of the 18 FLSA Plaintiffs' names came from the list sent by Defendants to Ms. Cottle pursuant to the certification order.

All of the five remaining FLSA Plaintiffs at issue on this motion–Tommy Conley, Jr., Roy Lee Gail, Shalonda Jones, Petrina Burpo, and Parthenia Ford–were at some point employees of Falcon Holdings, LLC but were never employees of Falcon Holdings Management, LLC.  None of these individuals were employed by Falcon Holdings, LLC at the time this motion was filed.

Tommy Conley, Jr. filed his written consent to become a party plaintiff on March 2, 2012. Defendants' records show that he worked at Defendants' store number 320 and that he was employed by Falcon Holdings, LLC from October 15, 2008, until May 15, 2009.  In response to Defendants' interrogatories, Mr. Conley indicated that he worked at Defendants' store on 5th Avenue in Gary, Indiana, from October 2006 through May 2008.

Roy Lee Gail filed his written consent to become a party plaintiff on February 27, 2012. Defendants' records show that he worked in Defendants' store number 988 and that he was employed by Falcon Holdings, LLC from September 22, 2008, until July 14, 2009.  In response to Defendants' interrogatories, Mr. Gail indicated that he worked at Defendant's store on Grant Street in Gary, Indiana, from August 2009 to October 2010.

Shalonda Jones filed her written consent to become a party plaintiff on February 14, 2012. Defendants' records show that she worked in Defendants' store number 532 and that she was employed by Falcon Holdings, LLC from August 20, 2006, until March 6, 2007.  In response to Defendants' interrogatories, Ms. Jones did not specify the location at which she worked and indicated employment dates in 2006.

30

Petrina D. Burpo filed her written consent to become a party plaintiff on April 17, 2012. She worked in Defendants' store number 988. She was employed by Falcon Holdings, LLC from April 25, 2007, until August 18, 2007.

Parthenia Ford filed her written consent to become a party plaintiff on May 14, 2012. Defendant's records show that she worked in Defendants' store number 988 and that she was employed by Falcon Holdings, LLC from September 28, 2009, until April 12, 2010.[10]

## C. Analysis

Defendants seek summary judgment against Tommy Conley, Jr., Roy Lee Gail, Shalonda Jones, Petrina D. Burpo, and Parthenia Ford on the basis that they do not meet the criteria for participation in the collective action as defined by the Court in its November 3, 2011 Order and against Mr. Conley, Mr. Gail, Ms. Jones, and Ms. Burpo on the additional basis that their claims are barred by the applicable statute of limitations. Plaintiffs respond, arguing that genuine issues of material fact exist as to all of these claims.

### 1. *Scope of Collective Action*

As noted above, the Court certified the class for this collective action as 94 individuals who worked at Defendants' store number 532 and who also worked during Ms. Cottle's period of employment with Defendants from October 26, 2009, until May 2, 2010. Individuals who do not meet this criteria are not eligible for participation in this collective action.

Tommy Conley, Jr. was employed at Defendants' store number 320 from October 14, 2008, until May 19, 2009; he falls outside both the store number and time frame set by the Court. Roy Lee

---

[10] In their Statement of Facts Giving Rise to Genuine Disputes, Plaintiffs identify alleged irregularities in the employment records of Kendra Jackson, Toinette Neal, and Latoya Hughes. However, because these Plaintiffs have been dismissed, any such dispute are not material.

Gail was employed at Defendants' store number 988 from September 22, 2008, until July 14, 2009; he falls outside both the store number and time frame set by the Court.  Petrina D. Burpo was employed at Defendants' store number 988 from April 25, 2007, until August 18, 2007; she falls outside both the store number and time frame set by the Court.  Parthenia Ford was employed at Defendants' store number 988 from September 28, 2009, until April 12, 2010; she falls outside the store number established by the Court's order.[11]  Shalonda Jones worked in Defendants' store number 532 from August 26, 2006, until March 6, 2007; she falls outside the time frame set by the Court.[12]

Plaintiffs posit that it is within the Court's discretion to expand the opt-in class to conform to the evidence in this case.  Plaintiffs base this argument on the logic that several individuals were "invited to opt into this case" who either worked at a different store than Ms. Cottle or during a different time period than set forth in the conditional certification order.  In its discretion, the Court disagrees.  As a case management tool, the November 3, 2011 conditional certification order narrowly tailored the scope of the collective action class based on Ms. Cottle's affidavit and the list of names she provided.  Both parties are at fault for allowing notices and opt-in forms to be sent to individuals who fell outside the class – Defendants for providing Plaintiffs with a list more inclusive than ordered by the Court and Plaintiffs for sending notices to individuals who, from the face of the

---

[11] Plaintiffs argue that there is a genuine issue of material fact as to whether Ms. Ford worked at any other stores in addition to store 988 because Defendants did not provide any transaction inquiry report or clock hour sheets for Ms. Ford.  However, Defendants provide print outs of the "Employee Maintenance" screen, a Payroll Status/Change Form, and an Employee Payroll File Checklist for Ms. Ford, all of which indicate that she worked at store 988.  Plaintiffs have offered no contradictory evidence, such as testimony by Ms. Ford, that she worked at store 532 to raise a genuine issue of material fact.

[12] Defendants do not seek summary judgment against Shalonda Jones on the basis that she falls outside the criteria for participation in the class established by the Court; however, a review of the records show that she did not work during the defined time frame.  See Def. Br., p. 17-18.

list, did not meet the criteria for participation in the class. The fact that some individuals outside the class defined by the Court returned consent forms does not guarantee that all potential plaintiffs in some larger class to which these individuals might belong (which Plaintiffs would define as all employees, regardless of store, whose claims accrued within the three-year statute of limitation period) also received notice and an opportunity to opt-in. Moreover, discovery was conducted by the parties based on the class defined in the Court's November 3, 2011 Order. Just as decertification is not proper based on the evidence adduced through discovery, expanding the criteria for participation in the collective action is not proper either.

Therefore, all five individuals do not meet the criteria for participation in the collective action, and summary judgment is granted in favor of Defendants on their claims.

2.      *Statute of Limitations*

Pursuant to 29 U.S.C. § 255(a), any cause of action brought under the FLSA, including those maintained as a collective action under § 216(b), must be commenced within two years after the cause of action accrued. 29 U.S.C. § 255(a); *see Bankston v. State of Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995). The statute of limitations is extended to three years if the cause of action arises out of a willful violation. 29 U.S.C. § 255(a). The burden of proof to establish a willful violation lies with the FLSA Plaintiffs. *McDonald v. Village of Palatine*, No. 08 C 5435, 2012 WL 2590492, *3 (N.D. Ill. June 29, 2012) (citing *Hardrick v. Airway Freight Sys.*, 63 F. Supp. 2d 898, 904 (N.D. Ill. 1999)). "A violation is 'willful' under the [EPA] if the defendant either knew he was violating the Act or was indifferent to whether he was violating it or not (and therefore 'reckless')." *Id.* (quoting *EEOC v. Madison Cmty. Unit Sen. Dist.*, 818 F.2d 577, 585 (7th Cir. 1987); *Walton v. United Consumers Club*, 786 F.2d 303, 311 (7th Cir. 1986) (defining "willful" as "knowing and voluntary"

for purposes of the FLSA); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985) (interpreting "willful" to mean a "reckless disregard" as to whether one's conduct is prohibited under a statute)).

> An individual claimant's action is deemed commenced, as it relates to a collective action:
>
> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256.  In other words, for the opt-in Plaintiffs at issue on this Motion for Summary Judgment, the cause of action is deemed commenced as to each on the date the individual filed the written consent to become a party plaintiff.

Shalonda Jones filed her written consent to become a party plaintiff on February 14, 2012. Her last paycheck was due and issued on March 16, 2007.  As such, the limitations period began to run on that date, and her deadline to file would have been March 16, 2009.  Petrina D. Burpo filed her written consent to become a party plaintiff on April 17, 2012.  Her last paycheck was due and issued on August 24, 2007.  As such, the limitations period began to run on that date, and her deadline to file would have been August 24, 2009.  For both Ms. Jones and Ms. Burpo, even if the three-year statute of limitations were applied for a willful violation, the claims of each would still be time barred by the FLSA.  Plaintiffs concede as much in their response brief.  Thus, even if Ms. Jones and Ms. Burpo met the criteria for participation in the collective action as defined by the Court and summary judgment had not already been entered against them, summary judgment in favor of Defendants based on a statute of limitations defense would be proper.

In contrast, Tommy Conley, Jr. filed his written consent to become a party Plaintiff on March 2, 2012.  His last paycheck was due and issued on May 29, 2009.  As such, the limitations period began to run on that date, and the two-year limitations deadline to file would have been May 29, 2011.  However, his written consent was filed within the three-year limitations period for a willful violation.  Similarly, Roy Lee Gail filed his written consent to become a party plaintiff on February 27, 2012.  His last paycheck was due and issued on July 24, 2009.  Therefore, the limitations period began to run on that date, and the two-year limitations deadline to file would have been July 24, 2011.  However, his written consent was filed within the three-year limitations period for a willful violation.  Although Plaintiffs attempt to meet their burden to prove a willful violation, it is unnecessary for the Court to engage in an analysis of whether the three-year limitations period applies for a willful violation as to Mr. Gail and Mr. Conley because neither meets the criteria for participation in the collective action, and summary judgment on that basis alone is proper.

Finally, the Court notes that the statute of limitations defense is not raised as to Parthenia Ford.

## D.      Conclusion

Accordingly, the Court grants the Motion for Partial Summary Judgment as to FLSA Plaintiffs Tommy Conley, Roy Lee Gail, Shalonda Jones, Petrina Burpo, and Parthenia Ford and denies as moot the motion as to Jasmine Smith, Jacqueline Coley, Kendra Jackson, Jasmine Marie Jackson, Lisa Stubbs, Toinette Neal, Alanza McCullum, Kyle Ferguson, Takyla Jones, Latoya Hughes, and William Lockhart.

## CONCLUSION

Based on the foregoing, the Court hereby:

(1)   **GRANTS in part and DENIES in part** Defendants' Motion for Discovery Sanctions as to Certain FLSA Opt-In Plaintiffs [DE 77];

(2)   **DENIES** Defendants' Motion to Decertify the Collective Action [DE 83]; and

(3)   **GRANTS in part** and **DENIES in part as moot** Defendants' Partial Motion for Summary Judgment as to the Claims of Certain FLSA Opt-In Plaintiffs [DE 80].

The Court **ORDERS** that the claims of opt-in Plaintiffs Jasmine Smith, Jacqueline Coley, Kendra Jackson, Jasmine Marie Jackson, Lisa Stubbs, Toinette Neal, Alanza McCullum, Kyle Ferguson, Takyla Jones, Latoya Hughes, and William Lockhart are **DISMISSED with prejudice**.

The Court **ORDERS** that summary judgment is granted in favor of Defendants and against opt-in Plaintiffs Tommy Conley, Roy Lee Gail, Shalonda Jones, Petrina Burpo, and Parthenia Ford.

The collective action claim brought in Count V of the Amended Complaint remains pending as to collective action class members Felicia Cottle, Fred Culbreath, and Deon Thompson.

So ORDERED this 20th day of September, 2012.


s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record